```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
CLINTON KNOLL,                              :

                Plaintiff,                  :   OPINION & ORDER

        -v.-                                :
                                                20 Civ. 4597 (GWG)
COMMISSIONER, SOCIAL SECURITY               :
ADMINISTRATION,
                                            :
                Defendant.
---------------------------------------------------------------x
```

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

Plaintiff Clinton Knoll brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying his claim for Disability Insurance Benefits under the Social Security Act ("the Act"). Both parties have moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).[1] For the reasons set forth below, Knoll's motion to remand is granted.

I.      BACKGROUND

    A.      Procedural History

On January 29, 2017, Knoll filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning December 17, 2015. SSA Administrative Record, filed May 24, 2021 (Docket # 30) ("R."), at 13. Knoll's application was denied on May 25, 2017, see R. 13, 109-113, after which Knoll requested a hearing before an

---

[1] Plaintiff's Motion for Judgment on the Pleadings, filed Aug. 25, 2021 (Docket # 35); Plaintiff's Memorandum of Law in Support, filed Aug. 25, 2021 (Docket # 36) ("Pl. Mem."); Defendant's Cross Motion for Judgment on the Pleadings, filed Nov. 8, 2021 (Docket # 40); Defendant's Memorandum of Law in Support and in Opposition to Plaintiff's Motion, filed Nov. 8, 2021 (Docket # 41) ("Def. Mem."); Plaintiff's Reply Memorandum, filed Nov. 24, 2021 (Docket # 42) ("Pl. Reply").

administrative law judge ("ALJ"), see R. 117.  A video hearing was held on March 8, 2019.  See R. 13, 58-93.  In a written decision dated April 24, 2019, the ALJ found that Knoll was not disabled and denied Knoll's claim.  See R. 13-27.  Knoll requested a review by the Appeals Council, which was denied on April 21, 2020.  See R. 1.  On June 16, 2020, Knoll filed this action seeking review of the ALJ's decision.  See Complaint, filed June 16, 2020 (Docket # 1).

      B.      The Hearing Before the ALJ

The hearing was held in Wichita, Kansas.  See R. 13.  Knoll and his counsel appeared remotely from Goshen, New York.  See id.  Vocational Expert ("VE") Cynthia A. Younger also testified at the hearing.  See R. 13, 83-91.

At the hearing, Knoll testified that he was not working and had not worked since December 2015.  See R. 65-66.  Previously, Knoll had worked as an emergency medical technician, handyman, advertising sales representative, chemical and drug sales representative, and assistant principal.  See R. 84, 262.  Knoll graduated from college in 2000, and was between 47 and 49 years old during the relevant period.  See R. 190, 212.

In December 2015, Knoll sought treatment for pain in his right arm, neck, back, and shoulder after a stretcher fell on him while he was transporting a patient into an ambulance.  See R. 66.  Knoll testified that following the injury, he underwent extensive physical therapy.  See R. 68, 70-73, 76-79.  Nonetheless, Knoll's pain worsened.  See R. 68, 72.  Knoll complained of headaches as well as pain in his left leg, right shoulder blade, and left hand (which he overused to compensate for the right arm injury).  See R. 69, 72, 80.  Knoll experienced numbness and weakness in his right arm and testified that he has trouble gripping and performing any fine manipulation with his right hand.  See R. 72, 75.  Knoll cannot reach with his right arm and can only slightly reach with his left.  See R. 77.  Knoll claimed that he could stand for only 5 to 15

minutes at a time, and could sit for only 5 minutes before needing to change position. See R. 77-78. Knoll needs to lie down for at least two hours per day and he takes naps on a daily basis. See R. 79. His prescribed medications make him "very sleepy." Id. Knoll uses a cane in his left hand when outside the house, although he has left the cane at home in the past. See R. 75, 80-81. Knoll has had surgeries on his right arm and back, see R. 69, 71-72, and foresaw the need for additional surgeries on his left wrist and hips, see R. 73-74.

Following Knoll's testimony, the ALJ questioned the VE. Specifically, the ALJ inquired about the employability of an individual with Knoll's vocational profile who was limited to light work except that he could (1) push and pull ten pounds occasionally and less than ten pounds frequently; (2) occasionally climb ramps and stairs; (3) never climb ropes, ladders, or scaffolds; (4) frequently balance, kneel, or crouch; (6) occasionally stoop and crawl; (7) occasionally handle with his dominant right upper extremity; and (8) must avoid vibrations and hazards such as unprotected heights and moving mechanical parts. See R. 84-85. The VE testified that such a person could not perform Knoll's past relevant work but could perform the occupations of Usher and Surveillance System Monitor. See R. 85-86.

    C.    The Medical Evidence

Both Knoll and the Commissioner have provided detailed summaries of the medical evidence. See Pl. Mem. at 1-17; Def. Mem. at 2-12. The Court had directed the parties to specify any objections they had to the opposing party's summary of the record, see Scheduling Order, filed May 25, 2021 (Docket # 31) ¶ 5, and neither party has done so. Accordingly, we adopt the parties' summaries of the medical evidence as accurate and complete for purpose of the issues raised in this suit. We discuss the medical evidence pertinent to the adjudication of this case in Section III below.

    D.    The ALJ's Decision

The ALJ denied Knoll's application on April 24, 2019.  See R. 27.  In doing so, the ALJ concluded Knoll "was not disabled under sections 216(i) and 223(d) of the Social Security Act through March 31, 2017, the last date insured."  Id.

Following the five-step test set forth in the Social Security Administration ("SSA") regulations, the ALJ found that Knoll last met the insured status requirements on March 31, 2017 and "did not engage in substantial gainful activity during the period from his alleged onset date of December 17, 2015 through his date of last insured of March 31, 2017."  R. 15.  At step two, the ALJ found Knoll "had the following severe impairments: Cervical Spine disorder, Lumbar Spine disorder, Right Elbow Dysfunction, Carpal and Cubital Tunnel Syndromes, and Obesity."  Id.

At step three, the ALJ found Knoll "d[id] not have an impairment or combination of impairments that m[et] or medically equal[ed] the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1" during the relevant period.  R. 16.  The ALJ specifically mentioned listings 1.02 ("Major dysfunction of a joint(s) (due to any cause)") and 1.04 ("Disorders of the spine").  Id.; see also 20 C.F.R. Part 404, Subpart P, Appendix 1.

Before moving to step four, the ALJ assessed Knoll's residual functional capacity ("RFC") for the relevant period.  See R. 17-25.  The ALJ determined that Knoll's testimony "concerning the intensity, persistence[,] and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record."  R. 18-19.  The ALJ concluded that Knoll had the RFC

> to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except that he could lift and/or carry and push and/or pull 10 pounds occasionally and less than 10 pounds frequently.  He could sit, with normal breaks, for a total of six hours per 8-hour workday, and stand and/or walk, with normal breaks, for a total of 6 hours per 8-hour workday.  He could occasionally climb ramps and

> stairs, but never climb ladders, ropes, or scaffolds. He could
> frequently balance, kneel, and crouch. He could occasionally
> stoop and crawl. He could occasionally handle with his dominant
> right upper extremity. He must [avoid] vibrations and hazards
> such as unprotected heights and moving mechanical parts.

R. 17. The ALJ further explained that "[w]hile [Knoll] was experiencing symptoms related to his lumbar and cervical spine prior to the date last insured, his symptoms and functional limitations do not appear to have progressed to a point that would have precluded standing and walking for six hours. There is also no evidence that [Knoll] was prescribed, or that he required, a cane or other assistive device for ambulation. Although [Knoll] alleged the need for naps due to sleepiness caused by his medication and reclining with his feet elevated to alleviate pain and swelling, the evidence does not support that degree of accommodation during the period at issue." R. 25.

At step four, the ALJ concluded that Knoll was "unable to perform any past relevant work" during the relevant time period. Id. Finally, at step five, considering Knoll's "age, education, work experience, and residual functional capacity" for light and sedentary work, the ALJ found there was "work that existed in significant numbers in the national economy" that Knoll could have performed — specifically, the jobs of Usher (DOT 344.677-014) and Surveillance System Monitor (DOT 379.367-010). R. 27. Accordingly, the ALJ determined that "[a] finding of 'not disabled' [was] appropriate." Id.

II.     GOVERNING STANDARDS OF LAW

   A.     Scope of Judicial Review Under 42 U.S.C. § 405(g)

A court reviewing a final decision by the Commissioner "is limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013)

(per curiam) (punctuation omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (punctuation omitted). Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)).

Importantly, it is not a reviewing court's function "to determine de novo whether [a claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (punctuation omitted); accord Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 122 (2d Cir. 2012). Rather, substantial evidence is "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (punctuation omitted) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 375; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008). "It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (punctuation omitted). The "threshold for such evidentiary sufficiency is not high." Id. The Second Circuit has held that "[t]he substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam) (emphasis in original, punctuation omitted). "The role of the reviewing court is therefore quite limited and

substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d at 454 (punctuation omitted).

B.  Standard Governing Evaluation of Disability Claims by the Agency

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see id. § 1382c(a)(3)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam); accord Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (per curiam); Craig v. Comm'r of Soc. Sec., 218 F. Supp. 3d 249, 260 (S.D.N.Y. 2016).

Regulations issued pursuant to the Act set forth a five-step process that the Commissioner must use in evaluating a disability claim. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Burgess, 537 F.3d at 120 (describing the five-step process). First, the Commissioner must determine whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe

medically determinable physical or mental impairment," id. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. §§ 404.1520(c), 416.920(c). Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, or is equivalent to one of the listed impairments, the claimant must be found disabled regardless of his or her age, education, or work experience. See id. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). Fourth, if the claimant's impairment is not listed and is not equal to one of the listed impairments, the Commissioner must review the claimant's RFC to determine if the claimant is able to do work he or she has done in the past, i.e., "past relevant work." Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. Id. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC, in addition to his or her age, education, and work experience, permits the claimant to do other work. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant cannot perform other work, he or she will be deemed disabled. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The claimant bears the burden of proof on all steps except the final one — that is, proving that there is other work the claimant can perform. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

III.     DISCUSSION

Knoll raises three objections to the ALJ's decision. First, Knoll maintains that the ALJ failed to properly consider whether Knoll is disabled under Listing 1.04A. See Pl. Mem. at 19. Second, Knoll contends that the ALJ failed to properly weigh the medical evidence and failed to develop the record when determining Knoll's RFC. See id. at 21. Finally, Knoll argues that the

ALJ failed to properly evaluate Knoll's subjective testimony.  See id. at 25.  Because we find Knoll's first argument has merit, we do not find it necessary to reach the remaining arguments.

Knoll contends that the ALJ failed to adequately consider whether Knoll's condition satisfied Listing 1.04A and thus required a per se finding of disability.  See Pl. Mem. at 19-21; Pl. Reply at 1-3.  Specifically, Knoll criticizes the ALJ for his "conclusory finding" that failed to "set forth a sufficient rationale in support of [his] decision."  Pl. Mem. at 20-21.

A claimant bears the burden of establishing that his condition meets or medically equals a Listing.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987); accord Perozzi v. Berryhill, 287 F. Supp. 3d 471, 483 (S.D.N.Y. 2018).  To satisfy this burden, a claimant must show that he meets "all of the criteria" in a Listing.  20 C.F.R. § 404.1525(c)(3); accord Sullivan v. Zebley, 493 U.S. 521, 530 (1990).  In so doing, the claimant "must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques."  Knight v. Astrue, 32 F. Supp. 3d 210, 218 (N.D.N.Y. 2012).

To satisfy Listing 1.04A, a claimant must make a threshold showing that he suffers from a "[d]isorder[] of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord."  20 C.F.R. Part 404, Subpart P, App. 1, § 1.04A.  A claimant must also demonstrate

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) . . . .

Id.

Here, the ALJ conducted no analysis whatsoever of the elements of the Listing. Instead, the ALJ simply repeated the Listing criteria and stated that Knoll did not meet the elements. See R. 16. Thus, the ALJ's ruling does not specify which element or elements of Listing 1.04 the ALJ concluded were not met. See id.

Notwithstanding this failure, a court has the power to uphold an ALJ's conclusion at step three in the "absence of an express rationale . . . [where] portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence." Berry v. Schweiker, 675 F.2d 464, 468 (2d Cir. 1982); accord Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 112-13 (2d Cir. 2010) (summary order); Gonzalez v. Colvin, 2016 WL 5477591, at *13 (E.D.N.Y. Sept. 28, 2016); Sava v. Astrue, 2010 WL 3219311, at *3-4 (S.D.N.Y. Aug. 12, 2010). In Berry, 675 F.2d at 469, the Second Circuit upheld an ALJ's determination that the claimant did not meet Listings 12.02 and 12.04, even though the ALJ provided no explanation for his conclusion. Berry stated:

> in spite of the ALJ's failure to explain his rejection of the claimed listed impairments, we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence. Cases may arise, however, in which we would be unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ. In such instances, we would not hesitate to remand the case for further findings or a clearer explanation for the decision. Thus, in future cases in which the disability claim is premised upon one or more listed impairments of Appendix 1, the Secretary should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment.

Id. (citations omitted).

Here, we cannot discern the ALJ's rationale because there are many portions of the record that potentially show that Knoll satisfied the listing. The threshold showing required to meet Listing 1.04A is evidence of a "[d]isorder[] of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis,

vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04. Here, an MRI of Knoll's lumbar spine revealed "[m]ultilevel" degenerative disc disease and "osteoarthritic changes." R. 438. At L2-L3, the exam showed "moderate to severe canal narrowing" and "left paracentral disc extrusion." Id. At L4-L5, the MRI revealed "severe canal narrowing" with "central disc protrusion" and "moderate to severe bilateral neural foraminal narrowing." Id. At L5-S1, the results indicated "mild to moderate canal narrowing," "central disc protrusion," and "severe bilateral neural foraminal narrowing." Id. Moreover, an MRI of Knoll's cervical spine revealed "[m]arked multilevel foraminal narrowing" at C4-C5, C5-C6, and C6-C7, "with significant displacement [of] nerve roots," in addition to "moderate severe degenerative disc disease" and "marked multilevel cervical spondylosis most marked with moderate severe deformity [to] spinal cord and spinal stenosis at C6-C7." R. 496. The MRI results also indicated "[a]t least mild/moderate degenerative change" to Knoll's "upper thoracic spine." Id.

As to whether Knoll showed "neuro-anatomic distribution of pain," Knoll's medical records repeatedly detail pain radiating from Knoll's lower back down his left leg. R. 341, 368, 399, 404, 412, 539, 540.

The remaining criteria are "limitation of motion of the spine, motor loss . . . accompanied by sensory or reflex loss and . . . positive straight-leg raising." 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04. Here, the record contains findings that Knoll had a limited range of motion in his cervical and lumbar spine. See R. 342, 353, 399, 404-05, 412, 539. As for motor loss, the regulations define "motor loss" as "atrophy with associated muscle weakness" or "muscle weakness." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. There is some indication of such weakness. See R. 399, 689, 788, 792, 809. The record also contains evidence of sensory and

reflex loss.  See R. 394, 404-05, 412, 607, 616, 625, 775, 793, 809, 1067.  Finally, the record reveals several positive straight leg raising tests.  See R. 368, 370, 373.

Based on the foregoing, "we cannot discount the possibility, even if it is not great, that had the ALJ actually analyzed the listing, the ALJ might have found" the Listing to have been met.  Suarez ex rel. C.L.S. v. Comm'r of Soc. Sec., 2021 WL 5326431, at *7 (S.D.N.Y. Nov. 16, 2021).  In other words, "the evidence suggesting that" Knoll "might meet" the Listing "is of sufficient substance that the ALJ was required to give an actual discussion of whether or not [Knoll] actually met this listing."  Id.  We recognize that some arguably contradictory findings are contained in the record, as noted by the Commissioner.  See Def. Mem. at 17-18.  But given the disputed evidence, we find ourselves in the same situation as the court in Norman v. Astrue:

> Although it may be the case that the ALJ would ultimately have decided that plaintiff's impairments did not meet or equal the requirements of Listing 1.04A, this possibility does not relieve the ALJ of his obligation to discuss the potential applicability of Listing 1.04A, or at the very least, to provide plaintiff with an explanation of his reasoning as to why plaintiff's impairments did not meet any of the listings.

912 F. Supp. 2d 33, 81 (S.D.N.Y. 2012).  Thus, on remand, the ALJ should assess whether Knoll meets Listing 1.04A.  If the ALJ chooses to reaffirm his prior conclusion, he should provide "a clearer explanation" for his decision.  Berry, 675 F.2d at 469.

IV.   CONCLUSION

For the foregoing reasons, Knoll's motion for judgment on the pleadings (Docket # 35) is granted, and the Commissioner's cross-motion for judgment on the pleadings (Docket # 40) is denied.  The case is remanded to the Social Security Administration for further proceedings consistent with this opinion.  The Clerk is requested to enter judgment and to close this case.

SO ORDERED.

Dated: March 14, 2022
      New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge